IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| YARED BEYENE, TADELU KIDANU, HAILEMARIAM GEBREMARIAM, JEA HUN LEE, ZEWDU GIRMA, KIM SENGSAVANG and RABEEA AL-ALWADI, <br><br> Plaintiffs, <br><br> v. <br><br> COVERALL NORTH AMERICA, INC. d/b/a COVERALL CLEANING CONCEPTS, PACIFIC COMMERCIAL SERVICES, LLC, and COVERALL OF NASHVILLE, INC., <br><br> Defendants. | Case No: 3:06-cv-628 <br> JURY DEMAND <br> Judge William J. Haynes |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
COVERALL NORTH AMERICA, INC.'S MOTION TO STAY PROCEEDINGS
PENDING ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS**

Defendant, Coverall North America, Inc. d/b/a Coverall Cleaning Concepts ("Coverall"), by its attorneys, respectfully submits the following reply memorandum of law in further support of its Motion (i) pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §3, to Stay Proceedings Pending Arbitration, or, in the alternative (ii) to dismiss Plaintiffs' Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

[1] As Coverall noted in its Motion for Leave to File Reply Memorandum, this Reply only addresses Plaintiffs' claim that they are not obligated to submit their disputes to arbitration. With respect to the alternative prong of this Motion (to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6)), Coverall respectfully rests on its moving papers.

# ARGUMENT

## I. Plaintiffs' Claim That They Did Not Understand What They Were Signing Is Insufficient To Relieve Them Of Their Contractual Duty To Arbitrate Their Claims

Relying on their oft-repeated claim that they somehow "lacked the capacity to contract in Tennessee" because none of them "were able to read English, and none spoke English with any level of competency," Plaintiffs seem to claim that their alleged illiteracy relieves them of their contractual obligation to arbitrate their disputes with Coverall. (Opposition at 1-2.)[2] It does not.

First, the claim that Plaintiffs could not understand what they were signing is factually deficient, as it is not supported by any affidavits or declarations. *See* Local Rule 7.01 ("where allegations of fact are relied upon [in a motion], affidavits or depositions in support thereof" must accompany the motion). Because the unsupported assertions of counsel are not evidence (*see Hana v. Gonzales*, 157 Fed. Appx. 880, 2005 WL 3420024, at *4 (6th Cir. Dec. 14, 2005); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723, at 64 (1983)), Plaintiffs' claim is entitled to no weight.

Second, even if Plaintiffs' claim was supported, it is legally deficient. In *Chapman v. H&R Block Mortgage Corp.*, 2005 WL 3159774 (Tenn. Ct. App. Nov. 28, 2005), the plaintiff asserted that she should not be bound by her agreement to arbitrate because "her eyesight was so

---

[2] Plaintiffs note that a limited subset of claims is carved out of the arbitration agreement. That is scarcely a basis for challenging the agreement. Consistent with the principle that arbitration agreements are to be accorded equal footing with other contracts (*see* 9. U.S.C. § 2), the concept of "'mutuality of obligation' has been largely rejected" in the arbitration context. *Doctor's Assocs, Inc. v. Distajo*, 66 F.3d 438, 451-52 (2nd Cir. 1995) (collecting cases); *see also* Williston, *Williston on Contracts* §57:1 (4th ed. 1995) ("[T]here is generally no need for 'mutuality of obligation' or 'mutuality of remedy' regarding an arbitration provision; the fact that only a party to the contract may insist upon or compel arbitration as the means of settling disputes under the contract does not render the contract void or unenforceable, so long as the contract as a whole is supported by consideration and is otherwise enforceable."); *Chapman v. H&R Block Mortgage Corp.*, 2005 WL 3159774, at **7-8 (Tenn. Ct. App. Nov. 28, 2005); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3rd Cir. 1999); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 453-54 (6th Cir. 2005); *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806-7 (7th Cir. 2003), *cert. denied*, 540 U.S. 1149 (2004); *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005).

poor that she couldn't read" the agreement when she signed it. *Id.*, 2005 WL 3159774, at *5. (A copy of this opinion is annexed hereto as Exhibit A.) Rejecting this assertion, the court reiterated the well-established principle that absent an allegation of fraud in the execution (which has not been alleged here), a person is "conclusively presumed" to know the contents of a contract he signs, whether he reads it or not, or whether he can read or not. "It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they were written. But such is not the law." *Id.*, 2005 WL 3159774, at *6 (quoting *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993)). Likewise, "'where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.'" *DeFord v. National Life & Accident Ins. Co.*, 185 S.W.2d 617, 622 (Tenn. 1945) (quoting 17 C.J.S. Contracts §139)). Accordingly, whether Plaintiffs did read or could read their agreements is irrelevant. Having signed them, they are bound by their contents.

Application of these principles is particularly appropriate in this case because Plaintiffs had **at least two weeks** to review their Franchise Agreements before they signed them. At least fourteen days before they executed their respective Franchise Agreements, each Plaintiff received from Coverall a copy of its then-current Uniform Franchise Offering Circular ("UFOC"), as required by the Federal Trade Commission's Franchise Rule, 16 C.F.R. § 436. (Copies of the receipts evidencing Plaintiffs' receipt of the UFOC and Franchise Agreements are

3

annexed to the accompanying Declaration of Michelle Teague; see Exhibit B.) Consistent with the FTC's Franchise Rule, the UFOCs which Plaintiffs received not only advised Plaintiffs of their obligation to arbitrate their disputes with Coverall, but also included a copy of the Franchise Agreement that each Plaintiff later signed. (*Id.* at ¶2.) As a result, Plaintiffs had more than a sufficient opportunity to review their Franchise Agreements (or to have someone read those Agreements to them, if actually necessary) before they signed the Agreements.[3] Their alleged failure to do either is not a basis for relieving them of their obligation to submit their claims to arbitration.

## II. Under The FAA, Which Governs This Motion, Plaintiffs Are Obligated To Submit Their Fraud Claims To Arbitration

Plaintiffs next attempt to circumvent their agreement to arbitrate by asserting that claims for fraudulent inducement are not arbitrable. Plaintiffs are incorrect.

### A. The FAA, Not Tennessee Law, Governs All Questions Of Arbitrability

Apparently recognizing that the federal law of arbitrability obligates Plaintiffs to submit all of their claims to arbitration, Plaintiffs' Opposition eschews federal law entirely. In its place, and in derogation of the well-settled principle that questions of arbitrability are governed by federal law (not state law),[4] Plaintiffs claim that they are not obligated to arbitrate their claims

---

[3] The express purpose of the waiting period (between delivery of the UFOC and the execution of the Franchise Agreement) is to "provide the prospective franchisee with sufficient time to thoroughly examine the disclosure statements and contract, to consult with attorneys, accountants, and other experienced business persons, to compare competing franchise offerings, and as a result to make an informed judgment as to the desirability of entering into a business relationship with the franchisor in question." *See* Statement of Basis and Purpose Relating to Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, at ¶G, reprinted at 2 Bus. Franchise Guide (CCH) ¶6300 *et seq.*, at p. 9362.

[4] *See*, *e.g.*, *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983) ("Federal law in terms of the Arbitration Act governs" the arbitrability of disputes "in either state or federal court."); *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985) (a court is to determine whether the parties agreed to arbitrate a dispute "by

4
Case 3:06-cv-00628  Document 24  Filed 08/04/06  Page 4 of 12 PageID #: 272

because under Tennessee law (as reflected in the Tennessee Supreme Court's opinion in *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79 (Tenn. 1999)) parties are not required to submit claims for fraudulent inducement to arbitration unless those claims were "specifically enumerated" in the parties' arbitration agreements. Plaintiffs are wrong for at least (2) reasons.

> **1.** ***Because The Parties Agreed That Arbitration Would Be Governed By The Federal Arbitration Act, Federal Law Governs The Scope Of Issues That Must Be Arbitrated***

First, *Frizzell* does not apply in this case. Five years after *Frizzell* was issued, the Tennessee Supreme Court again addressed whether a party was obligated to submit to arbitration a claim that she was fraudulently induced to enter into a contract containing an arbitration clause. *Taylor v. Butler*, 142 S.W.3d 277 (Tenn. 2004). However, the facts in *Taylor* differed in one significant respect from the facts that were presented to the *Frizzell* court: rather than agreeing to arbitrate pursuant to Tennessee law (which seems to generally bar the arbitration of claims for fraudulent inducement), the parties in *Taylor* agreed that arbitration would be "conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 12 [sic] et seq." *Id*. at 282 (noting this "important" difference). Recognizing "the long history in the federal courts of allowing arbitration of fraudulent inducement claims under the FAA," the *Taylor* court held that this difference was dispositive. *Id*. at 282-83 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). Specifically, because arbitration was governed by the FAA, and because the arbitration clause was broad, the court held that the plaintiff was bound "to arbitrate [her] claim of fraudulent inducement." *Id*. at 283.

The arbitration agreements at issue in this case are indistinguishable from the one at issue in *Taylor*. Each arbitration clause clearly provides that arbitration "shall be subject to the

---

applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act") (internal quotations omitted).

5

Federal Arbitration Act . . . ." (*See* Exhibits A-C to the Derella Decl. at ¶21(A)(1); a copy of the Derella Decl. is annexed to Coverall's Motion to Stay or Dismiss.)[5] And under the FAA, claims for fraudulent inducement must be submitted to an arbitrator "unless the making of the arbitration clause itself was fraudulently induced." *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998); *accord Buckeye Check Cashing, Inc. v. Cardegna,* __ U.S. __, 126 S. Ct. 1204, 1209 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").

In this case, Plaintiffs never claim that the arbitration clause itself was induced by fraud. As a result, their claims must be stayed pending arbitration.

> **2.    Both The Sixth Circuit And The United States Supreme Court Have Made Clear That Arbitrability Issues Are Determined By Federal Law, Notwithstanding The Parties' Inclusion Of A General Choice Of Law Clause In Their Contract**

Second, even if *Frizzell* were applicable here, its holding – that a Tennessee choice-of-law clause renders arbitrability issues subject to Tennessee law (and not the FAA) – is, with all due respect, contrary to the holdings of the Sixth Circuit and the United States Supreme Court. In *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926 (6th Cir. 1998), the defendant appealed the district court's ruling that that the plaintiff was not obligated to arbitrate its claim for fraudulent inducement. The district court came to this conclusion by relying on the parties' Ohio choice-of-law clause, which it determined governed all issues under the contract, including

---

[5]    In *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989), the Supreme Court affirmed a California state court opinion which resolved a motion to stay proceedings under state arbitration rules, rather than the FAA. The Supreme Court held that this was permissible because the parties' contract reflected an intent to be bound by California's arbitration rules instead of the FAA (*id.*, 489 U.S. at 474), and because the primary purpose of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Id.*, 489 U.S. at 479. In this case, the parties' arbitration agreements make clear that "[a]rbitration shall be subject to the Federal Arbitration Act." Consistent with *Volt*, these agreements should be enforced according to its terms.

questions of arbitrability. *Id*. at 933. Because Ohio law (like Tennessee law) supposedly reserves "the issue of fraudulent inducement . . . for judicial determination" (*id*. at 932), the court ruled that the plaintiff's claim was not subject to arbitration.

The Sixth Circuit reversed this determination. According to the court, the choice-of-law clause merely governed the parties' rights and obligations under the contract, not questions of arbitrability. *Id*. at 937. Arbitrability questions, the appellate court held, were governed by the FAA, which makes clear that "the issue of fraudulent inducement of a contract is to be decided by an arbitrator, unless the making of the arbitration clause itself was fraudulently induced." *Id*. at 933; *accord Jacada (Europe), Ltd. v. International Mktg. Strategies, Inc.*, 401 F.3d 701, 709-12 (6th Cir. 2005) (FAA governed standards for vacatur of award, not the law specified in the parties' choice of law clause).

The United States Supreme Court came to the very same conclusion in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212 (1995). There, the defendant securities firm filed a motion to vacate an arbitration award which awarded the plaintiffs both compensatory and punitive damages. According to the defendant, the award was improper because New York law (the law specified in the parties' choice-of-law clause) did not authorize arbitrators to award punitive damages. Rejecting the defendant's contention, the Supreme Court held that "the best way to harmonize the choice-of-law provision with the arbitration agreement [was] to read 'the laws of the state of New York' to encompass substantive principles that New York courts would apply," but not to include issues of arbitrability. *Id*., 514 U.S. at 63-4, 115 S. Ct. at 1219. In other words, "the choice-of-law clause covers the rights and duties of the parties, while the arbitration clause covers arbitration." *Id*.

7

As in *Mastrobuono* and *Ferro*, while the parties agreed that Tennessee law would govern their rights and obligations under the Franchise Agreements, they did not agree that Tennessee law would govern issues of arbitrability. To the contrary, their agreements specifically provide that arbitrability issues will be subject to the FAA. For this reason as well, *Frizell* is simply inapplicable.[6]

### B. To The Extent Tennessee Law Purports To Preclude The Arbitration Of Fraudulent Inducement Claims, That Law Is Preempted By The FAA

Article VI of the United States Constitution – the Supremacy Clause – provides that federal law "shall be the supreme Law of the Land; . . . anything in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Thus, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Waste Management Ass'n*, 505 U.S. 88, 108 (1992) (internal citations and quotes omitted). "Even state regulation designed to protect vital state interests must give way to paramount federal legislation." *De Canas v. Bica*, 424 U.S. 351, 357 (1976).

Preemption, the vehicle by which the Supremacy Clause is generally enforced, "may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in

---

[6] The holdings of the Sixth Circuit and the Supreme Court are supported not only by "the policy of the FAA," but "by common sense." *Id*. at 938. Indeed, accepting the argument proffered by the Plaintiffs – that claims for fraudulent inducement are simply not arbitrable – would, in the Sixth Circuit's words, "effectively abrogate" the FAA. *Ferro*, 142 F.3d at 938. If a party wanted to avoid its obligation to arbitrate, that party could "simply assert that the contract was fraudulently induced, thereby removing the case from the jurisdiction of the arbitrators, and vesting it with a court." *Id*. Furthermore, almost all contracts contain choice-of-law clauses. If the law set forth in those clauses actually governed questions of arbitrability, "the FAA would be applicable in very few cases." *Id*. Effectively stripping the FAA of all applicability is not a viable result, nor is it consistent with the avowed purpose of the FAA – to overcome, in all courts (state and federal) the historical distrust of arbitration as a means for resolving disputes. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270, 115 S. Ct. 834, 837-38 (1995).

the statute's language or implicitly contained in its structure and purpose.'" *Gade*, 505 U.S. at 98 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)); *accord Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Explicit preemptive language, as a result, need not appear – and "[m]ore often . . . does not appear" (*Barnett Bank v. Nelson*, 517 U.S. 25, 31 (1996)) – for preemption to occur. For "even when Congress has not completely displaced state regulation in an area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law – that is, to the extent that it 'stands as an obstacle to the full accomplishment and execution of the full purposes and objectives of Congress.'" *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 477, 109 S. Ct. 1248 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The FAA does not contain any express preemption provision, nor does it indicate a Congressional desire to occupy the entire field of arbitration. *Volt*, 489 U.S. at 477. But to the extent Tennessee law is construed to prohibit the arbitration of claims for fraudulent inducement in arbitration agreements encompassed by the FAA, it presents an obstacle to one of the fundamental precepts of the FAA: namely, that parties are to arbitrate all claims other than those which attack the validity of the arbitration agreement itself. As the United Statement Supreme Court made clear in *Prima Paint*:

> If the claim is fraud in the inducement of the arbitration clause itself – and issues which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. [Footnote omitted.] **But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally**.
>
> * * *
>
> We hold, therefore, that in passing upon a §3 application for a stay while the parties arbitrate, a federal court may consider only issue relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakable clear

9

congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

*Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806 (1967) (emphasis added); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852 (1984) ("In enacting §2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). In fact, the Sixth Circuit recognized this very problem in *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926 (6th Cir. 1998). Noting that the Supreme Court had interpreted the FAA "to mean that only claims for fraudulent inducement of the arbitration clause itself may be heard by a court," the *Ferro* Court held that accepting the plaintiff's contention – that Ohio law requires a court to consider claims that a contract was fraudulently induced – would "clearly contravene" the FAA. *Id.* at 935. Therefore, because "the FAA and Ohio law directly conflict," "the state law is preempted." *Id.*

As in *Ferro*, to the extent Tennessee law is construed to require judicial consideration of fraudulent inducement claims, it is inconsistent with the FAA. It is therefore preempted.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Coverall's moving papers, this action should be stayed pending arbitration, as required by Section 3 of the Federal Arbitration Act. In the alternative (i) Plaintiffs' Complaint should be dismissed pursuant to Rule 9(b), and (ii) Count III of Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6), with prejudice.

Respectfully submitted,

**COVERALL NORTH AMERICA, INC. d/b/a COVERALL CLEANING CONCEPTS,**


/s/John R. Tarpley_____
John R. Tarpley, No. 9661
**Lewis, King, Krieg & Waldrop, P.C.**
SunTrust Bank Building
201 Fourth Avenue North, Suite 1500
Post Office Box 198615
Nashville, Tennessee  37219-8615
(615) 259-1366
(615) 259-1389 (fax)


/s/Norman M. Leon_____
Norman M. Leon, Esq.
Alice A. Kelly, Esq.
**DLA Piper Rudnick Gray Cary US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois  60601
(312) 368-4000
(312) 236-7516 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of August 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filling through the court's electronic filing system.

Jay Slobey, Esq.
Patrick Dollar, Esq.
Blackburn & McCune, PLLC
SunTrust Bank Building, Suite 1700
201 Fourth Avenue North
Nashville, TN 37219

Gail Vaughn Ashworth, Esq.
Gideon & Wiseman
1100 Noel Place
200 Fourth Avenue North
Nashville, TN 37219-2144

                                                    /s/ John R. Tarpley